I want to welcome everyone to the Fourth Circuit this morning. We have four interesting cases. We look forward to the arguments. The first one is a tax case. I'm not going to try to pronounce the name of the plaintiff, but Mr. Gare, good to have you here, sir. Thank you, Judge King, and may it please the Court. The tax court's decision in this case should be reversed for two independent reasons. First, the agency's notice of deficiency fails to comply with the APA's foundational reasoned explanation requirement. And second, regardless of that procedural defect, the tax court erred as a matter of law in concluding that the company was not entitled to a deduction under Section 83 for Mr. Chinstock. With the Court's permission, I'd like to begin with the APA issue this morning. After the Supreme Court's admonishment in the Mayo Foundation v. United States decision that courts are not free to carve out exceptions to the APA for tax cases, business as usual is no longer an adequate response for why the agency's decision-making is not subject to the fundamental requirements of the APA. And yet ultimately, that's what the government's position boils down to in this case, because the government has failed to identify a single persuasive reason for why the APA does not apply by its terms to the agency's foundational decision document, the notice of deficiency. The IRS, it has conceded, I think it's fair to say, is an agency within the meaning of the APA. There's really no serious question that a notice of deficiency, which is a final determination that a citizen owes taxes to the government, and the government may collect on that notice unless the citizen goes to court to challenge it, is agency action within the meaning of the APA. And there's no serious question that the tax court is a reviewing court within the meaning of the APA. And that's the case even if the standard is de novo? Yes, Your Honor. The tax, the notice. I guess my question is it doesn't seem to fit neatly within the parameters of how you typically define the standards of review in an APA case. We give agencies deference precisely because the statute requires that they give reasoned decisions for why they do what they do. But in this case, if the tax court is free to start all over again, then how does that fit within the structure of an APA statute which suggests that deference is typically owed to those decisions? Sure. And I think the most important response is it gets to the reason why we have the reasoned explanation requirement. And the Supreme Court's most recent decision on that, the Fox decision, I think is illuminating. In that case, Justice Kennedy, in his concurring opinion, which was a necessary fifth vote decision there, said that the APA constrains the agency's decision-making when it acts. And similarly, the four dissenters in that case amplified that theme. Justice Breyer did in his decision. What that means is that the reasoned explanation requirement ensures that the agency, when it's making its decision, is looking to the facts, is connecting the dots, and is reaching a reasoned decision. The APA requires the agency to do that. And that's for the benefit of whom? Certainly not the tax court, I don't think, since they get to start from scratch. No, I think that that's fair, Your Honor. It's for the benefit of administrative procedure and decision-making. It's for the benefit of the taxpayer to ensure that when the agency arrives at this decision that affects thousands of taxpayers' lives every year, that we have a process in place to ensure that the agency has engaged in a reasoned decision-making process, not an arbitrary decision process. Well, how does Section 7522 of the tax code then play in? Because that was adopted after the APA. Sure. You're absolutely right, Your Honor. It was adopted 40 years later. And Section 7522 contains certain additional information requirements for a notice of deficiency. Right. But it also says that the inadequacy or the inadequacy of the description does not invalidate the notice, doesn't it? Exactly. But, and this is the important part, it says, under the preceding sentence, which means that the inadequacy, the failure to provide the right description, which is the what, what is the deficiency, not the how, how did the agency get to that point, which is the reasoned explanation that's required, that the failure to include those additional description requirements doesn't provide a basis for invalidating notice of deficiency under 7522. So Congress couldn't have made, been more clear that this was a self-contained provision and didn't affect the agency's obligation to comply with other requirements, including the APA's most foundational requirement for all agency decision-making, which is that the agency, when it's engaged in this process of reaching a final determination, actually lay out the path by which it reaches decision. What would have sufficed in this case, from your perspective, in terms of the sufficiency of the? Sure. I mean, it's a very simple requirement. The Supreme Court has made clear it's not a high bar. I think we would need to know how the agency reached this decision. I mean, there's a multi-factor test here. I mean, just to take the bare minimum, did the agency conclude that the stock was not transferred in connection with employment? Did it conclude it was not subject to a substantial risk of forfeiture? Was it both? So you're saying conclusions would have sufficed? Well, no. It would have to lay out the basic facts. And this isn't a new requirement in the sense that not only has it been there all the time, but the agency's own rules, the agency's internal operating manual about what a notice of deficiency should contain, says it should contain an explanatory paragraph. And the mine run of notices of deficiency do contain that. This case is really, I think it's fair to say it's undisputed, a notice of deficiency in this case is the aberration. It simply states the conclusion. The deduction isn't denied because you haven't established it. I mean, that's the definition of Ipsit-Dixit. So holding that the agency is subject to the APA's foundational requirements isn't going to impose any new obligation on its own manual. And, again, this is at Section 8.17.4.13 calls for the explanation. The mine run of notices of deficiencies do. And I think it's important. This case involves a corporate taxpayer. But the court's decision in this case is going to apply to everyday citizens who get a notice of deficiency, don't have the resources to bring the IRS to court simply to find out the reason by which the agency concluded, the path that the agency took to conclude that the citizen owed additional taxes to the government. And I think, you know, there's a suggestion here that, well, what's the harm? And I think it gets to Your Honor's question, Judge Diaz. The tax court is engaged in de novo review of the tax notice of deficiency. So what's the harm? First of all, the most fundamental harm is that we don't know that the agency has complied with the process that Congress has set forth to ensure that there is reasoned rather than arbitrary decision making. We don't know that the agency didn't reach the conclusion that deduction should be denied by flipping a coin or throwing a dart against the board. Second of all, taxpayers, as the Tenth Circuit said in the Fisher case, aren't required to bring the United States government to court simply to find out the reasons that, the reasons by which it determined that the taxpayer owed additional money to the government. Third of all, this actually does have an impact on tax court proceedings in the sense that it's established that in the tax court, the burden of proof is on the taxpayer coming in, except when the government raises a new matter in the tax court, in which case the burden of proof shifts. So by virtue of simply stating in conclusory fashion, no deduction here, the government has insulated itself from the argument that the burden of proof would shift. For example, if it had said, well, okay, the stock is transferred in connection with the services, but there isn't a substantial risk of forfeiture. If it had laid that out with the minimum facts in its notice explanatory paragraph and the notice of deficiency and then gotten to tax court and said, well, actually, we think that it wasn't transferred in connection with services either, then the burden of proof would have shifted on that. On the burden of proof issue, I'd point your honors to tax court rule 142A1 and tax court's decision in Chiro versus Commissioner 77, tax court 881, page 891. So it does matter with respect to tax court proceedings. But the fact that notice of deficiencies are subject to de novo review in the tax court, the reason why Congress made that determination is because it wasn't comfortable assuming that the agency was doing everything. So I think it's counterintuitive to think that by virtue of subjecting the tax court to the more rigorous standard of review, that it's somehow meant to relieve the agency from the foundational decision-making requirement that all agencies have, which is when you're making the decision, connect the facts to the law and at least provide the citizen an adequate description that he can reasonably discern the path that the agency follows. Can you tell me how you see these two statutes applying in this context, the APA and 7522? Sure. Because in response to just Kenan's question, you made a comment about, which I assume you're saying it's a limitation on the scope of the notice. You said something about under the preceding sentence. But as I read that statute, the description included not just the amount due, et cetera, but also the basis for the notice. It would seem to just occupy the field. So tell me how you think these two would operate in tandem. So I think that 7522 is a description requirement. And that that follows. What does that mean? It means that it goes to the what. What is the result, not the how, the path by which the agency reached there. And I think it's important to keep in mind that 7522 was enacted as part of a taxpayer's rights, a bill of rights, a taxpayer bill of rights in 1988. How do you deal with the fact that it does indicate that the notice includes a basis for it? No, that's right, Your Honor. But I think, first of all, that basis for language I think has to be read in light of the surrounding text, which makes clear that what Congress is really saying is as a benefit to taxpayers, you should specify, make sure that the actual notice includes this additional information. But by imposing that additional specific informational description requirement, Congress made clear that it wasn't eliminating the freestanding obligation under the APA to provide, to ensure there was no arbitrary and capricious decision-making to provide a reasoned explanation. But wouldn't the APA, if that had been the APA by itself, would have accomplished that goal? So what's the purpose, then, of the statute? Well, I think it's fundamentally to instruct the agency that the notices of deficiency should include these additional pieces of information. But I think by virtue of doing that in a taxpayer bill of rights, I think it's inconceivable that Congress meant to eliminate the APA's foundational requirement of a reasoned decision. And the two statutes can exist in tandem perfectly. You have the reasoned explanation requirement, and then you have 7522, which specifies some additional information that the notice of deficiency should contain. I mean, you can make perfect sense of both together. I mean, what should give the Court pause, though, is the government's argument that 7522 in a taxpayer bill of rights impliedly repealed the APA's foundational requirement of a reasoned decision. And that's particularly since Section 559 of the APA specifically says subsequent legislation should not be read to repeal the APA's requirements, absence, unless it does so expressly. And the Supreme Court has said that that, in the Dickinson case, that that imposes a clear statement rule. 7522 not only doesn't include a clear statement that the APA was repealed, but it does just the opposite by saying that failure to comply with this sentence isn't a basis for invalidating the notice of deficiency, leaving other foundational requirements in place. You didn't state so expressly in your brief, but if the case goes back on remand, are you suggesting that the IRS can't remedy its notice? Is there some statute of limitations issue here that might prevent it from doing that? Well, we think that there is, Your Honor, but I think fundamentally what we're asking this Court to do is to reverse the tax court's decision and to hold that the notice of deficiency is invalid, that that eliminates the basis for jurisdiction in the tax court, and then the case can go back to the agency. The agency can issue a new notice of deficiency, and we can, you know, argue about whether or not the explanation in that case is adequate. You know, presumably it would be. That's usually the way it works. One would hope it would work that way. But we don't know because the agency has to say so. And then we can fight about whether or not it's timely or not. Is there a statute of limitations consideration in that? No, there very much is. I mean, the Napoleolo case from the Ninth Circuit holds that the statute of limitations does not run. I mean, we very much expect the government to make the opposite argument. This Court doesn't need to consider that argument here. If I could touch on this. Well, if an indictment is deficient, sometimes you can go in and file a bill of particulars or something. That kind of theory doesn't apply here? Well, our position would be that the statute of limitations is not told when you issue an invalid notice of deficiency. And, you know, this gets back to the risk of gamesmanship, that if the Court holds that the agency can do this, just issue the blanket denial of something. Then, you know, for things that are going down to the wire, the agency doesn't have to go through the process that it should to ensure that there's reasoned decision-making, not arbitrary decision-making. This would be a clean decision that you're out from under it completely. Well, I think the parties would fight over that. Well, I'm sure they would. But, Donald, what's your position? Our position would be, and that would be consistent with the Ninth Circuit, and I think that's fair to the taxpayer. The IRS has lots of ways to protect itself from that. In addition, it could have gone back initially just to amplify its explanation. I mean, we raised this first off in the litigation, so the IRS could have corrected this. We're in this position because it stuck to, you know, dug in its peels and took the position that it wasn't even going to provide an explanation in the notice of deficiency. Now, with respect to the Section 83 issue, and, you know, we think this is a very important question as well, two areas of law in particular, I point the court on this. One, I mean, the facts overwhelmingly show that the stock was issued in connection with performance of services. It was issued when Mr. Chin joined the company. It was limited. It was only issued to employees, and the restrictions in place limited the fair market value to his tenure with the company. So it's the quintessential example of stock issued in connection with employment. The tax court reached the opposite conclusion by pointing to the fact that Mr. Chin had paid for the stock, the $450 par value of the stock. But the agency's own regulations sensibly provide that the fact that someone pays for a stock doesn't mean that stock wasn't issued in connection with the performance of services. But the court did provide a basis of distinguishing it from the other employees who had more severe restrictions on their ownership of the stock and also did not pay. Isn't that correct? That's true. The other employees had more conventional options-like arrangements. But that's just two classes of employees, that Mr. Him, Mr. Chin were very senior employees. They had more rights in the stock. But I think unquestionably the stock was issued in connection with their performance of services. And I think the fact that the company treated it differently for other employees, which is not unusual, doesn't mean that you wouldn't analyze the restrictions on Mr. Chin's stock straight up. They were able to vote their stock right away. Isn't that correct? They were. You're saying that isn't a problem either. It's not. And to be clear, our position is Mr. Chin owned the stock. I mean, the same way that you would own your house even though there's a mortgage and you stop paying, you could forfeit it. And, you know, this gets to the question of substantial risk of forfeiture. The reason why there was a substantial risk of forfeiture is because the stock expressly provided that if Mr. Chin left the company or was fired, he would have to sell the stock to the company at substantially less than fair market value, depending on when he left. Okay, but termination for cause is a substantial risk of forfeiture, right? Well, termination, we know from the Austin case, for example, that a provision that said you have to leave if you're convicted of a crime, that's not a substantial risk of forfeiture. But what the Austin case does say, too, is that termination if you leave for another opportunity is a substantial risk of forfeiture. As a matter of law, that's a substantial risk of forfeiture. And I don't think the government can test that. At least it hasn't said it disagreed with the Austin case on this. That would be different. So you're saying you're distinguishing competition from being terminated for cause, in other words, leaving to compete in another business. Well, at a minimum, and then the restriction here provided whether or not Mr. Chin left of his own will or because he was terminated for cause. I think our view is either would provide a substantial risk, and I think that's consistent with the case law. But at a minimum, the possibility that an employee would go to another company is a substantial risk of forfeiture. And I think the Austin case lays that out. I think that's well established as a matter of law. You know what that red light means. I do, Your Honor. And I will, with the Court's indulgence, reserve the remainder of my time. Thank you very much. Ms. Del Sol. Good morning. May it please the Court. My name is Ellen Del Sol, and I represent the Commissioner of Internal Revenue. The tax court here correctly rejected the argument that the notice of deficiency was invalid and correctly ruled for the Commissioner on the merits as well. I'd like to first address the notice of deficiency issue. Here, I think the tax court correctly concluded that the Administrative Procedure Act doesn't apply because of the Supreme Court held in Bowen v. Massachusetts, and a number of other courts have recognized, most recently, the Axe case in the tax court that we submitted under 28J. The APA doesn't supersede other statutory schemes that already provided for adequate judicial review, and numerous authorities have recognized that the tax deficiency scheme was such a preexisting scheme, including this Court's opinion in O'Dwyer, the Ninth Circuit in Wilson, the Eleventh Circuit in Neal, the tax court, not only in Axe but in Ewing and Porter, which are discussed in our briefs. And I think, furthermore, it was long established, going back to Judge Learned Hand's opinion in Olson v. didn't require any detail explanation in a notice of deficiency. It simply required stating the amount of the deficiency in a very brief statement of the basis, which the notice of deficiency here does. This is kind of void, really, isn't it? I'm sorry? The notice of deficiency they got in this case was essentially meaningless. No, I don't think that's the case, Your Honor. What's the content? The content? The content is that you lose. Well, we would lose, and I would like to address that point, that the taxpayer is actually trying to use the APA, which is designed to ensure judicial review, to get out of court altogether. I'm concerned about the IRS and the fact that it issues this content void. Well, I think if you look at page 26 of the Joint Appendix, the explanation that is attached to the notice of deficiency, and the First Circuit in Gieselman, which is cited in our brief, and a number of other tax court cases have held that that's part of the notice of deficiency. And that states that the deduction under Section 83H is denied because the taxpayer hasn't shown that it's entitled to the deduction. And the Supreme Court has been very clear in cases like INDOPCO, which we cited, as does the tax code in Section 7491, that where a deduction is involved, it's a matter of legislative grace, and the burden is on the taxpayer to show their entitlement to the deduction. Right. So essentially the government can just say, you're not entitled to it. And that's sufficient. And the reason what's driving my question here is that here you may have a plaintiff that is a corporate entity with millions of dollars at issue here, but how is the average taxpayer going to go into tax court and hire a lawyer to contest something like that? Being able to go to tax court isn't a realistic remedy for the average taxpayer. It seems to me that your argument really, it's a pretty tough sell. I think there are a couple of points there. First of all, the taxpayer doesn't have to pay before they go into tax court, and thousands of taxpayers every year go into tax court pro se and successfully lay off their – we see these cases all the time where people appear pro se. They can just issue a notice that really doesn't tell the taxpayer anything except they don't qualify. They don't qualify for the claim deduction. Well, there are two points I would like to make, Your Honor. First of all, the problem is that the government doesn't generally have that information. As the cases that put the burden on the taxpayer recognize, the taxpayer uniquely has that information. The taxpayer is the one that has their receipt substantiating what they've claimed. They have the records that show that they actually use their home office as the home office. Those are the sorts of things that come up with individuals. And they're the ones that have those receipts, so it makes sense that they would have the burden of showing that, and that's why the courts have put that burden and why the tax code puts that burden on the taxpayer. But there are procedures, Section 7491, which is part of the Taxpayer Bill of Rights that was enacted in 1998, does shift that burden in certain circumstances if the taxpayer makes certain showings. And there's also the appeals proceeding, which, if you look at the record here, makes clear that this taxpayer really had a very, very thorough explanation of the notice of deficiency, starting at page 42 of the joint appendix. In that process, taxpayers normally, before they get a notice of deficiency, they'll get a 30-day letter that says you have 30 days to go to the appeals office if you disagree with this. So there's a chance before tax court to get more information, so an individual taxpayer certainly can pursue that avenue. But I think it's important to recognize that once the notice of deficiency is used, if the court doesn't follow the existing case law that has said, you know, a minimal statement of the basis is enough, it gets into a slippery slope of there's more and more burden on the agency to provide some detailed explanation. And I think it's important to recognize if the notice of deficiency is issued and the taxpayer pursues an action in tax court and makes an assertion that the notice is invalid, once you're in tax court, the statute precludes issuing any sort of second notice that would correct any flaw in the notice of deficiency. I mean, the new items can be introduced for which the burden is on the commissioner, and the taxpayer also could show that they actually made an overpayment, but the notice of deficiency can't be changed to improve the explanation at that point. And typically, just because of the volume of notices that the IRS has, or the volume of taxpayers the IRS has to deal with, and the time it takes to get through the audit process, these are typically issued right up against the statute of limitations. And so this argument is based of trying to stay out of court using a statute that's designed to ensure judicial review as a mechanism to avoid this 58 million, you know, avoid the end result, which the court found on the merits here, that they don't get the $58 million deduction. And it would mean to rule that an explanation beyond what 7522 expressly requires and what the case law over the last 80 years has required, that that would really mean a real shift in policy. And there are probably millions of notices of deficiency out there now that taxpayers would be coming into court saying we're invalid, and all that money would be lost to the FISC. And it would mean going forward that the tax notice of deficiency would have to be increasingly detailed to protect against that risk. And that's exactly what the First Circuit said in the State of Abraham, isn't required, that the notice doesn't have to be detailed like a brief. It should just be a simple statement of the basis for the denial of the deduction. And the tax court rules provide for situations where a notice doesn't have a basis and the government can't show anything, they provide that the taxpayer, the burden of proof shifts. And I think even if the government is completely not justified in its position, there are provisions for fees in the tax court. And I think 7522 is a very clear-cut statute, and I think the suggestion that it is confined to just, you know, a notice won't be held invalid if it doesn't meet the preceding sentence, but a reasoned explanation can still be required doesn't make sense because the basis would, you know, it's hard to see where the line is between stating the basis and the explanation. So I think this was a clear intentional provision by Congress that meant just to codify that preexisting case law in cases like Kramer and Olson that had long held that the statement of the basis for the notice of deficiency really had to be very simple and to the point. And that's so even though the statute makes no reference to the APA or its intent to repeal or exclude the agency from the APA? Well, I think there are two points there. First of all, the Supreme Court in Marcella v. Bonds dealt with the situation where there was an argument that a statute superseded the APA, and the court there said if the intent of Congress is clear, it doesn't matter if it used some magical password saying this is an exception from the APA. The issue is whether the intent of Congress is clear, and I think 7522 is a very clear statute. Furthermore, as the 11th Circuit recognized in the Neal case, it's part of a codification. The statutes that have sort of expanded on the deficiency procedures and provided further detail on how they operate are codifications of case law, particularly in the case 7522 is a codification of case law, but where Congress has made little tweaks to the deficiency rules, that's part and parcel of that pre-existing statutory scheme that under Bowen v. Massachusetts was one that was not subject to the APA in the first place. So I think the APA really should not be held to apply here, and to hold otherwise really would run into conflict with a huge number of cases, including this Court's opinion of Dwyer and with all those cases that I mentioned, and not to mention there are countless cases in other circuits that have held that a notice of deficiency doesn't have to have an explanation. It just has to have a very simple statement that the determination was made that's required by statute and the amount of the determination. I mean, I think there are cases that are even much more sparse than what 7522 even asked for in terms of a basis. And I think certainly here the record is very clear that the taxpayer was well apprised of the basis for the notice. I'd just like to briefly note that if the Court should nonetheless conclude that the APA applies, and I think under Bowen v. Massachusetts it shouldn't, and the Acts Court really very cogently explains that, but I think as Judge Diaz pointed out, the notice of deficiency really doesn't fit within any of the types of agency actions that are specifically addressed in the APA, and I think that in itself is a reason to conclude the APA doesn't apply because it really doesn't fit. It's like trying to put a square peg in a round hole. But I think if it did apply at all, the closest analog would be Section 555E, which deals with informal decision-making, and I think even there it particularly doesn't fit because the statute talks about informal decision-making within the context of a request by a party. And notice of deficiency is issued based on the agency's determination by the IRS, not at a request of a party, and it also doesn't have the finality because there's still the tax court proceeding that has to happen before the expiration of time. Your Section 83 argument and the comment of your opposing counsel that this is merely a hindsight analysis regarding substantial risk of forfeiture. I think that's not correct, Your Honor. I think there are several things that are key here. First of all, I think the text we're toting, I believe, is correct in terms of matter of evidence, and it's consideration of the fact that these were basically partners with just a 0.5 percent difference in their stock, or maybe even less, 0.25 percent difference in their voting stock ownership. And it looked at the regulation that deals with substantial risk of forfeiture when a party is a substantial shareholder in the company, and it looked at the fact that these two individuals, when they did restrict their stock, which was notably after the stock had been issued and all the requirements in writing were in place for issuing the stock, both paying for it and the corporate authorization, that that restriction was mutual so that both Chin and Hume were subject to putting themselves under the same restrictions. And so it looked at all that together to conclude, as a matter of fact, which can only be reversed through clear error, that there wasn't a substantial risk that any forfeiture that could have happened under the shareholders' agreement was substantial. And I think that's a clear error review, and I think also it correctly found on the record, as a matter of fact. I think the regulation lays out the factors, and you have to look at the factors together with that. But I think there's an even overwhelming legal reason to affirm here, and I think that's the fact that the tax filings repeatedly treated this as Chin's fully vested stock. And there's a Treasury regulation, Treasury Regulation 1.1361-1B3, that specifically says that you can't have S corporation stock that's also fully vested and owned and voted and dividends received, and all those things that happened as if it were fully owned S corporation stock, and also have stock, the Section 83 stock that was received in connection with employment and remained subject to a substantial risk of forfeiture. So the tax filings that happened over the years here, that Chin and Hume both stipulated were consistent with their understanding of their ownership, are entirely inconsistent under the regulation with that being the fact. And you can't have both be true. And also there's the duty of consistency, because the duty of consistency says, if a taxpayer's taken a position in one year, which DTRI did from 2002 to 2006, it took the position it was an S corporation, and it got all the benefits of being an S corporation, which means no corporate level tax, that shareholders get money from the corporation without payroll tax, and then turn around and say, no, it was not an S corporation fully vested stock, as all these tax filings indicated. It's just something that the successor can't do under the duty of consistency under the clear law of the circuit as addressed in our briefs. The tax court didn't address that. But I think it's a legal issue that plainly requires affirmance here. But I think the tax court's evidentiary findings are correct. And I think the court also, in this case, not only is it necessary to win, the taxpayer had to show both that there was a substantial risk of forfeiture and that stock was issued in connection with employment. And I would just point out that on the connection with employment issue, it is true that the tax court noted that the proximity and time of getting the stock in the start of employment was one factor that counseled in favor of finding in connection with employment, but it otherwise found the factors did not support that showing. The court found that Jim paid par value for the stock and that that was a capital investment, and that that's inconsistent with it being stock issued in connection with employment. And significantly here, as was pointed out during the appellant's argument, the company had lawyers that drafted all these agreements, and it clearly issued the stock to Jim without any restrictions whatsoever on December 12th. The steps were taken under the law, under the filist and scientific instruments cases cited in our briefs that were enough to issue the stock to Jim. And then subsequently he agreed, which he didn't have to do, and there was nothing obligating him to do to enter into the restricting shareholder's agreement. And so his stock became fully invested stock at that point and can't be subsequently made subject to a substantial risk of forfeiture for purposes of Section 83. Here's essentially what happened was the new company took over and tried to change the rules. That appears to be what happened. The first characterization of it is Section 83 stock appears at the time of the merger. And with respect to every other grant of restricted stock to other employees that were made at the time at the start of the company, and then subsequently with respect to non-voting stock that was issued to Chin and Hume, the documents clearly stated that the stock was being issued in connection with employment. But Chin's voting stock agreement, which is at issue here,  Is it material that Chin signed the letter in December of 2002 saying that I am subscribing to the stock for investment and not for purpose of distribution or resale? Well, I think that's relevant. How does that factor in? Well, I think first of all, it's important that he signed that letter and the company authorized issuance of the stock and he paid for the stock all before any restriction whatsoever existed. And so at that point, he owned the stock and it wasn't subject to a substantial risk of forfeiture. It doesn't matter that the certificates were not issued until later. And I think furthermore, I think the fact that he says he's purchasing them for investment is an indication that he is, as the other documentation that we cite in the record indicates, he's a co-founder of the company and he's investing in the startup. And that reflects the fact that's consistent with the court's finding that he was making a capital investment, that he was not an employee who was receiving the stock in connection with his employment as part of his compensation. Are there any further questions of the court? I would just mention briefly on the APA issue that for all the reasons I've discussed, I really don't think the APA governs here. But if the court were to find that, I think the LTV case provides the best guidelines on the most potentially applicable guidelines because it deals with an informal adjudication and notes that in that context, only a brief explanation is needed and recognizes that you look at the statutory purpose that's involved in analyzing how the APA review standards apply. But I really would emphasize that in that context on the APA issue, this is a situation where the taxpayer is trying to use a statute that was designed to fill gaps where there was no judicial review to apply it, what was supposed to be a shield for the party who was affected by agency action as a sword to avoid the merits on this tax issue. And so I think really that shouldn't be permitted and it would have really catastrophic effects for the tax law because it would change what the IRS has to do and a notice of deficiency would invalidate potentially millions of notices of deficiency. You're saying this is a big case. And it would create a double burden on the courts as well. And yes, Your Honor, it is. If there are no further questions, that's all I have. Thank you very much. Thank you very much. Mr. Garrett. Thank you, Your Honors. Your Honors, this case is not about money to the public fisc. It's about whether everyday Americans are entitled to a reasons explanation when the IRS issues a deficiency notice that can change their lives. And the government's position, it made clear this morning, is that the IRS doesn't have to say anything except that your deduction is denied. The reference to the appeals process here, there were different individuals who raised different arguments. That didn't give us notice of the ultimate decision that the IRS reached. And the tax court settled case law, Greenberg's Express, 62 TC 324, page 327, is that you don't look behind the notice of deficiency. The reference to the Bowen case and the special statutory scheme is a red herring. Your Honor, all that law establishes is that where Congress does provide a special statutory review scheme, then you follow that scheme, you go to that court to raise your APA arguments. And so here, everybody agrees that we're in tax court because Congress has a special scheme in the deficiency procedures. And Section 703 of the APA makes this clear. What that case law does not establish is that when you're in that court, you don't subject to the agency the same standards that every other agency is subjected to. And that comes from Section 706. The standards there, the arbitrary capricious standard and the fundamental reasons explanation requirement. The agency is still provided no explanation as to why that requirement doesn't govern. It's decision-making just like any other agency. This Court would not be the first to be reaching this conclusion. The Tenth Circuit in the Fisher case found that a deficiency was invalid or found that agency action was invalid and sent the case back, referred the case back to the ---- Wasn't Fisher a little different, though, because it involved the question of discretion as opposed to an interpretation of a statute? You're right about that difference, Your Honor. But I think the path that the Court followed in saying that the IRS couldn't force the taxpayer to bring suit to find out the reasons for the agency's action and that ultimately the tax court found that the agency's action was invalid and referred it back to the IRS. The SCAR case from the Ninth Circuit is another example where a court found a notice of deficiency was invalid. With respect to 7522, there's a reason that the government omitted any reference to the under the preceding sentence language in its brief before this Court, and that's because that sentence makes clear that 7522 cannot possibly displace the foundational requirements of the APA, and it would be perverse to conclude that a taxpayer bill of rights eliminated the fundamental bedrock protection on all agency action. The notion that this Court would change IRS practice or tax administration if it concludes that the APA applies to the IRS just like any other agency is completely unfounded and contradicted by the IRS's own manual, which states that as a matter of operating procedure, an explanatory notice and paragraph should be provided in the notice of procedure, and that's the way, as we cited articles in our brief, reply brief, the IRS traditionally operates. This case is the aberration that approves the necessity of the rule of reasoned explanation requirement. On 83, two quick points. First, I think the government retreated primarily to the duty of consistency point as Judge Diaz pointed out. The tax court did not reach that issue. That issue is not a legal issue. It's a discretionary, equitable determination, and importantly. What about this December 2002 letter where Mr. Chin says, I am subscribing to the stock for investment? Okay, so you've got a pretty significant noun there, aren't you? I'm subscribing, and you've got to the stock for investment. So isn't that a very clear indication of the intent of the parties? Well, I don't disagree on that, Your Honor. Give the document its fact, but, you know, we've conceded all along that Mr. Stock owned, Mr. Chin owned the stock. He took the stock. It was his stock. The question is. Was he subscribing to it if he was getting it in connection with his employment? Of course. I mean, the only reason he got it was because he joined the company. The stock restrictions said that it was issued to ensure. Subscribing, though, suggests he was purchasing. Well, he did, Your Honor. He paid $450 for it. But the agency's own regulations say the fact that you're entitled to purchase stock doesn't mean it wasn't issued in connection with performance. I mean, what happens in these startups is senior executives come in. They have an opportunity to buy a large stake in the company, and, you know, they own that stock, as Mr. Chin did. But the question is, was it subject to the substantial risk of forfeiture? And here the government hasn't denied that the restrictions on the face of the stock said, if you leave, you have to sell this back to us at substantially below fair market value. That's the definition as a matter of law of a substantial risk of forfeiture. I understand the government to say that all that occurred later, and you don't look at what happens subsequently. You look at what happened initially when the stock was first purchased. Is that right? Well, I think that may go to two different points. But you look to determine whether there's a substantial risk of forfeiture. The agency's own regulations say you look at the time that the stock is transferred, right? So that's the time that Chin joins the company. So the question is, has the government or the tax court pointed to any piece of evidence at that time that suggests that the company wouldn't have enforced those restrictions against Mr. Chin if he left? And the answer is no. What they refer to is the post hoc working relationship. But that happened over time. You can always look back and say, well, he didn't leave or went along just swimmingly. But the history of small business is filled with examples of relationships that go south and the people that chase better opportunities. And you have to make that determination from the standpoint of when the stock was issued. And here there's not a single piece of evidence that suggests that Mr. Chin, consistent with his fiduciary duties, would not have enforced those restrictions. He was a controlling shareholder. He was the only member of the board of directors. There's no basis for finding that he wouldn't have enforced those restrictions. The government is left with the duty of consistency argument. The court should remand for that determination. Among other things, it requires a determination of whether or not the government was actually harmed by any inconsistent representations. And if you go back and look at the summary judgment brief that we filed in the tax court, we explained at pages 48 to 52 why at the end of the day the government not only is not harmed, but may actually be better off if it loses on the 83 issue because of all the different players in place. So the court should reverse on the 83 issue. The tax court's decision is erroneous as a matter of law, and it should remand the case to the tax court for consideration of the duty consistency issue. If it disagrees with us on the APA, fundamentally our position is that the court should reverse the tax court's decision, hold that the IRS is subject to the APA like every other agency, and notice of deficiency in this case doesn't possibly combine, comply with the fundamental reasoned explanation requirement, and therefore it is invalid. I think we understand. Thank you, Your Honors. We appreciate it very much. We'll come down and greet counsel.
judges: Robert B. King, Barbara Milano Keenan, Albert Diaz